UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN COMMERCE INS. CO.,<br>    *Plaintiff*,<br><br>v.<br><br>STEPHEN PANUS, et al,<br>    *Defendants.* | 3:22-CV-809 (OAW) |

## ORDER GRANTING SUMMARY JUDGMENT

**THIS ACTION** is before the court upon Plaintiff's Motion for Summary Judgment ("Motion"). *See* ECF No. 55. The court has reviewed the Motion, the opposition brief filed by Caitlin and Alexis Rorke (the only defendants to file a response to the Motion), *see* ECF No. 58, Plaintiff's reply brief, *see* ECF No. 59, and the record in this matter, and is thoroughly advised in the premises. After careful review, the court finds that the Motion must be **GRANTED.**

**I.   BACKGROUND**[1]

This case arises from the tragic death of Jackson Panus, the teenage son of Defendants Stephen and Kellie Panus. In August 2020, Jackson went on vacation to Block Island with Defendants Caitlin and Alexis Rorke (his girlfriend and her mother, respectively), where the Rorkes had a vacation rental property (the "Block Island

---

[1] All factual assertions are taken from the parties' statements of fact. There are no facts in dispute. *See* ECF Nos. 55-1 and 58-1.

1

Property").[2]  Some friends of the two teens joined them there a few days after Jackson and the Rorkes arrived.  One of these friends purchased alcohol at Defendant Seaside Liquors, LLC[3] ("Seaside") and brought the alcohol with him to the Block Island Property.  Alexis Rorke allegedly also provided alcohol to the minors, or at least made alcohol available to them.  The group of friends drank alcohol at the Block Island Property and on a nearby beach, despite all being underage, to the point that they became intoxicated.  Caitlin attempted to drive her friends and Jackson to the Block Island Ferry Terminal in her mother's vehicle, which she was using with her mother's consent, but along the way, she struck a telephone pole, throwing Jackson from the car.  The injuries he sustained in the collision were fatal.

Mr. Panus, as the executor of his son's estate, sued the Rorkes in Rhode Island state court.  He also brought suit in Connecticut state court against Seaside.[4]  The Panuses allege that the negligence of the Rorkes and Seaside (the other defendants to this action) caused Jackson's death.  Seaside separately has filed an apportionment claim against the Rorkes.

Plaintiff issued a homeowner's policy ("Policy") to Alexis Rorke, which was active at the time of the accident.  Plaintiff brought this action under the Declaratory Judgment Act ("DJA") to establish that it has no duty under the Policy either to defend or to indemnify the Rorkes in connection with any of the underlying state cases.

---

[2] It is not clear whether the Rorkes owned and leased out the Block Island Property or were renting it.
[3] There are several "Seaside Liquors" entities joined as defendants, but they all appear to refer to the same establishment and as such the court will not differentiate between them herein.
[4] Mr. Panus also sued the owner of Seaside, Defendant Robert Pambianchi, who since has passed away and thus is represented here by Defendant Kathleen Pambianchi as the executor of his estate.  *See* ECF No. 35.  The Pamgianchi defendants are included in any reference to "Seaside" herein.

## II. **LEGAL STANDARD**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court construes the cited evidence in the light most favorable to the nonmoving party and "resolves all ambiguities and draws all reasonable inferences against the moving party." *Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021).

Here, there are no facts in dispute. The court is presented with the purely legal question of whether declaratory relief is appropriate.[5] *Stewart v. Old Republic Nat'l Title Ins. Co.,* 218 Conn. App. 226, 240 (2023) ("The question of whether an insurer has a duty to defend its insured is purely a question of law . . . .") (quoting *Lancia v. State National Ins. Co.*, 134 Conn. App. 682, 689, cert. denied, 305 Conn. 904 (2012)) (alteration in original) (internal quotation marks omitted). Under Connecticut law, "[a]n insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." *Nash St., LLC v. Main St. Am. Assurance Co.*, 337 Conn. 1, 9, 251 A.3d 600, 606 (2020) (quoting *Travelers Casualty & Surety Co. of America v. Netherlands Ins. Co.*, 312 Conn. 714, 739, 95 A.3d 1031 (2014)) (internal quotation marks omitted). Any doubt on this point is resolved in favor of the insured. *Id.* at 607. In deciding this question,

---

[5] Plaintiff argues, and Defendants do not refute, that Connecticut law governs the analysis here. The court is satisfied that despite the accident itself having occurred in Rhode Island, the Policy was taken out for a Connecticut property, by a Connecticut resident, and includes terms specific to Connecticut (indeed, it is the "Connecticut Premier Living Insurance Policy," *see* ECF No. 55-2 at 1), and therefore, even if there a dispute as to choice of law, Connecticut law should govern any interpretation of the Policy itself. *See Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 134 (D. Conn. 2003) (noting that Connecticut follows the "most significant relationship" test, which seeks to interpret contracts using the local law of the state which has the most significant relationship to the transaction).

3

the court must look to the Policy itself and the claims asserted by Mr. Panus in the underlying actions and determine if any "allegation of the underlying complaint[s] falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion." *Id.* The duty to defend is broader than the duty to indemnify, *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760 (2013), and where there is no duty to defend, there also is no duty. *Warzecha v. USAA Cas. Ins. Co.*, 206 Conn. App. 188, 192 (2021) ("[W]hen an insurer does not have a duty to defend, it also will not have a duty to indemnify.").

## III. DISCUSSION

As a preliminary matter, the court must determine whether it is within its discretion to exercise jurisdiction over this action, and, if so, whether it should do so. Under Connecticut law, a controversy over the duty to defend is ripe for review where a lawsuit is filed which may trigger that duty. *Ohio Sec. Ins. Co. v. Veteran Constr. Servs., LLC*, No. 3:23-CV-257 (SVN), 2024 WL 1287583, at *7 (D. Conn. Mar. 26, 2024) ("[A]n insurer's duty to defend is triggered by the filing of a lawsuit . . . ."). There is no argument that subject matter jurisdiction is lacking in this action, and the court is satisfied that the underlying lawsuits render the question of Plaintiff's duty to defend (at least) ripe for review. Thus, there is no jurisdictional impediment presented.

But whether to hear a DJA claim still remains within the discretion of the court. In determining whether to exercise its discretion, the court must consider whether declaratory judgment would (1) clarify or settle the legal issues involved; (2) finalize the

controversy and offer relief from uncertainty; (3) be used merely for procedural fencing or a race to res judicata; (4) increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) be the most effective remedy; and (6) comport with the principles of judicial efficiency and judicial economy. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023).

      The court finds these factors weigh in favor of hearing Plaintiff's claim. Given that there already are several underlying lawsuits, all of which impute liability to the Rorkes, which liability the Rorkes contend has been assumed by Plaintiff via the Policy, there is considerable uncertainty in the state actions, which may be dispelled by a ruling here. Moreover, this is the exclusive means by which Plaintiff's legal obligations to the Rorkes may be clarified, thus it is not only the most effective, but also the only remedy available to Plaintiff. Given the pendency of the underlying state actions, the court is satisfied that this action is not brought for any improper purpose. And finally, the court concludes that the discrete issue presented in this case does not encroach upon any issue currently pending before any state court. In sum, the court finds it appropriate to determine the question presented, that is, the question of Plaintiff's duty to defend the Rorkes in the underlying lawsuits.

      Said differently, the question presented here is whether the claims brought by Mr. Panus in the state actions could be covered, even only possibly, by the Policy. It is undisputed that the Policy was in effect on the date of the accident and that the Rorkes were covered individuals. It also is clear that the Policy covers the Rorkes for personal liability in certain circumstances. ECF No. 55-2 at 21. Plaintiff contends, though, that these are not those circumstances. Specifically, Plaintiff argues that the Block Island

Property was not an "insured property" as that term was defined in the Policy, such that the accident falls without coverage to begin with, and in any case the accident was excluded from coverage under an exclusion for motor vehicle liability. The Rorkes argue that neither term completely forecloses even the possibility of coverage.

The court turns first to the motor vehicle liability exclusion. Plaintiff relies upon a term that disclaims coverage for any "motor vehicle liability." Relevant here, "motor vehicle liability" is defined as:[6]

> Liability for " bodily injury" or "property damage" arising out of the: (1) Ownership of such vehicle or craft by an "insured"; (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person; (3) Entrustment of such vehicle or craft by an "insured" to any person; (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

ECF No. 55-2 at 1. It is undisputed that under the terms of the Policy, Jackson's death qualifies as a "bodily injury," and that the car Caitlin was operating at the time of the accident qualifies as a "motor vehicle" subject to this exclusion. The Rorkes argue, though, that the "bodily injury" did not "arise out of" the Rorkes' ownership, use, entrustment, or negligence with respect to the "motor vehicle."

"Connecticut courts have had previous occasions to interpret the phrase 'arising out of,' as the phrase is used in auto exclusions in insurance policies and consistently have held that the phrase broadly applies to preclude coverage for claims whenever a plaintiff's injuries are related—even slightly—to the use of an automobile." *Kling v.*

---

[6] Plaintiff has attached the Policy to the Motion, and the court has taken terms directly therefrom, though only the relevant portions are reproduced here. The page numbers indicated refer to the Policy's internal pagination, and not the pagination supplied by the electronic filing system.

6

*Hartford Cas. Ins. Co.*, 211 Conn. App. 708, 716, cert. denied, 343 Conn. 926, 275 A.3d 627 (2022). Indeed, the Rorkes themselves concede that the phrase "arising out of" has been construed by Connecticut courts to mean "'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to,' even in the context of motor vehicle exclusions." *New London Cnty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 752 (2012).

It seems beyond argument that Jackson's injures related significantly to the use of an automobile such that the exclusion clearly should apply. Yet the Rorkes argue that even under this expansive construction of the phrase, the motor vehicle liability exclusion still does not conclusively apply to the collision at issue. They argue that Plaintiff has conflated the words "injury" and "liability," and while the *injury* (that is, Jackson's death) certainly resulted from the use of a motor vehicle, the *liability* therefor did not. By the Rorkes' argument, the *liability* for Jackson's death arose at the Block Island Property, where the Rorkes allowed their underage guests to drink alcohol to excess.

It is clear to the court that it is the Rorkes who have conflated contractual liability and moral culpability. The Policy does not cover bad acts; it covers injuries. The relevant Policy provisions clearly state that Plaintiff will, subject to certain limitations, cover the insureds for damages or medical expenses due to "*bodily injury*." *See* ECF No. 55-2 at 1, 21. Thus, while culpability may have accrued to the Rorkes when they (according to Mr. Panus) behaved irresponsibly at the Block Island Property, there was no contractual *liability* until Jackson was injured in the car crash. The cause of Jackson's untimely passing was not his own alcohol poisoning, so the drinking, alone, did not give rise to any injury covered by the Policy. If Caitlin had not crashed, there would have been the same bad acts, but no contractual liability. Similarly, had the relevant events been exactly the

7

same, except that the teens had not been drinking, the liability would have arisen all the same because the *injury* would have occurred.  Thus, for purposes of the Policy, there is no meaningful distinction between liability and injury, and therefore no ambiguity.  *New London Cnty. Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 165 (2013) (noting that "any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms . . . .").

The Rorkes attempt to shoehorn the underlying claims into the Policy's coverage by characterizing one of Mr. Panus's claims as alleging "social host liability."[7]  They argue that Mr. Panus is suing for the Rorkes' conduct at the Block Island Property, and thus Plaintiff's duty to defend is triggered.  But this argument ignores the context of the complete claim and relies upon the same tortured misinterpretation of the plain language of the Policy.  In the "social host liability" claim, Mr. Panus still seeks to recover for the death of his son, thus relating the claim back to the *injury* Jackson sustained.  And "social host liability" has no meaning within the four corners of the Policy.  In the world of the Policy, "social host liability" is a form of "personal liability," which is defined as discussed above: the damages that accrue as a result of bodily injury, within certain limits.  One of these limitations is the motor vehicle liability exclusion.  Thus, the Rorkes' characterization of the underlying complaint does not save their problematic construction of the Policy.  *Stewart*, 218 Conn. App. at 240 ("[W]e will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable.") (quoting *Kling*, 211 Conn. App. at 713–14) (alterations in original).

---

[7] Mr. Panus does not use this phrase, but he does allege that Alexis Rorke was negligent in allowing the teens to imbibe under her supervision.

8

The Rorkes cite to New Jersey case law to support its position, but the court need not resort to foreign rulings with no precedential value in analyzing the question presented here. Recent precedential authority exists which all but demands a decision in Plaintiff's favor. In *Liberty Ins. Corp. v. Johnson*, 222 Conn. App. 656 (2023), the Appellate Court of Connecticut was presented with a factual scenario nearly identical to that which is presented here. There, several insurance companies brought suit against their insureds, seeking a declaration that they had no duty to defend the insureds in an underlying tort action. That underlying tort action alleged that the insureds' minor son had consumed alcohol at a bar and then gone to his parents' (the insureds') home, where he consumed more alcohol (and was allowed to do so by his parents) even though he was visibly intoxicated. He then drove his father's car with a friend in the passenger seat. He lost control of the vehicle and struck a telephone pole, injuring his passenger, who brought suit against the insureds, alleging various negligence claims. Relevant here, the passenger specifically alleged that the parents had been negligent in permitting their underage son to drink alcohol in their home.

The appellate court concluded that the trial court had committed no error in determining that the parents' homeowner's policy did not cover the passenger's injuries due to a motor vehicle liability exclusion that is identical to the one at issue in this case in all material respects. The appellate court stated that "[a]lthough some of the allegations in the negligence counts against the [parents] concern conduct . . . that occurred at their home in Glastonbury, those counts clearly and unambiguously state that the injuries and damages complained of were sustained '[a]s a result of the collision,' and thus, "the

operative event that gave rise to the injuries and damages sustained by [the passenger], as alleged in the complaint, was the motor vehicle accident . . . ." *Id.* at 675.

*Liberty* directly answers the precise question presented in this action. Accordingly, the court must conclude that Plaintiff has no duty to defend, and consequently, no duty to indemnify the Rorkes in connection with the underlying actions brought by Mr. Panus. Because the motor vehicle liability exclusion definitively excludes coverage, the court need not address Plaintiff's alternative argument that the Block Island Property is not covered under the Policy.[8]

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, ECF No. 55, is **GRANTED.**
2. The court hereby declares that Plaintiff has no duty to defend the Rorkes in the underlying actions brought by Mr. Panus in connection with his son's death, nor does Plaintiff have any duty to indemnify the Rorkes should any judgment be entered against them in those actions.
3. The Clerk of Court respectfully is asked to enter judgment in Plaintiff's favor consistent with this ruling and to please close this case.

---

[8] Nor could the court answer this question. There is nothing in the record that states whether the Block Island Property was owned by the Rorkes or rented to them, which information is essential to determining whether it is an "Insured Location" as defined by the Policy.

**IT IS SO ORDERED** at Hartford, Connecticut, this 7th[th] day of February, 2025.

                             _/s/_
                             OMAR A. WILLIAMS
                             UNITED STATES DISTRICT JUDGE